## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | | |
|---|---|---|
| **RED OAK HOSPITAL, LLC,** | § | |
| *PLAINTIFF* | § | |
| | § | **CIVIL ACTION NUMBER** |
| | § | |
| **VS.** | § | _____ |
| | § | |
| | § | |
| **MACYS, INC., MACYS, INC.** | § | |
| **WELFARE BENEFITS PLAN,** | § | |
| **and STEPHEN J. O'BRYAN** | § | |
| *DEFENDANTS* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff RED OAK HOSPITAL, LLC files this Original Complaint against Defendants MACYS, INC., MACYS, INC. WELFARE BENEFIT PLAN, and STEPHEN J. O'BRYAN (collectively "Defendants") and would show the following:

### I. Introduction

1.    Plaintiff asserts claims sounding in ERISA as well as applicable state law.

2.    This action arises out of, *inter alia*, Defendants' systematic and intentional violations of ERISA fiduciary and co-fiduciary duties. These ERISA violations were committed by Defendants through the operation of a systematic embezzlement and/or conversion scheme involving the Plan Assets of the Plan, where Defendants, through Cigna, approved of a claim's payment meant for Plaintiff, but, instead of it being paid to Plaintiff, the claim's payment was converted by Cigna to its own use, with Defendants' knowledge, by Cigna secretly withholding and cashing the check drafted for Plaintiff under the guise of a fee forgiveness withhold under Cigna's "fee-forgiveness protocol".[1]

---

[1] This Court has already ruled as a matter of law that this fee-forgiveness protocol was an "unprecedented claims process methodology" (*see Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. 4:13-CV-3291, 2016 WL 3077405, at *24 (S.D. Tex. June 1, 2016) (Hoyt, J., mem. op.)) and that "ERISA does not permit the interpretation [of the fee-forgiveness exclusion] embraced by Cigna" (*see id.* at *18).

3.      Cigna issued a payment check to Plaintiff to satisfy a claim filed by Plaintiff for services performed on a patient, who is a Plan Beneficiary of Defendants; however, in addition to issuing a check to Plaintiff, Cigna issued a secret check to itself for the same amount. Cigna then cashed the secret check it issued to itself, and then placed a stop on the check issued to Plaintiff before Plaintiff could receive and cash the check to reimburse itself for services performed on Defendants' Plan Beneficiary.[2]

4.      Cigna also issued deceptive and inconsistent documents to Plaintiff and the Patient-Plan Beneficiary, specifically the Provider Explanation of Medical Payment, Provider Explanation of Medical Payment Report, Patient Explanation of Benefits, and Cigna Claim Details Sheet. Through these documents, Cigna deceptively and inconsistently provided Plaintiff with payment, through the above mentioned check, for the claim's benefit payment while, at the same time and on another document, informing Plaintiff that the claim is being conditionally withheld until Plaintiff submits proof that the patient-Plan Beneficiary has paid his full cost-sharing amount.[3] While informing Plaintiff of these two distinct, inconsistent and deceptive stances on the claim, Cigna simultaneously informed the patient-Plan Beneficiary on two separate documents that he owes $0.00 to Plaintiff in cost sharing obligations; thus, allowing Cigna to withhold and convert the claim's payment Plaintiff is entitled to under Cigna's "fee-forgiving protocol", all while never having made any disclosure or reference to any actual Plan terms.

5.      Defendants were fully made aware of and alerted to their co-fiduciary's, Cigna, evident and blatant embezzlement and conversion actions involving the self-dealing of Defendants' Plan Assets, which is a statutorily prohibited transaction under ERISA. Even after being provided with, *inter alia*, a copy of Plaintiff's complaint with the Department of Labor and

---

[2]  See Exhibit C for a copy of the Stop Payment placed on the check.

[3]  ***Cigna Claim Detail Sheet*** - Remark Code 0322 - CHARGES WHICH YOU ARE NOT OBLIGATED TO PAY OR FOR WHICH YOU ARE NOT BILLED OR FOR WHICH YOU WOULD NOT HAVE BEEN BILLED EXCEPT THAT THEY WERE COVERED UNDER THE PLAN ARE NOT COVERED. CIGNA WILL RECONSIDER THIS CLAIM ONCE WE SEE PROOF OF PAYMENT. (See Exhibit D)

request to investigate these facts and potential violations, Defendants continued to recklessly disregard their statutorily mandated fiduciary duties by failing to respond to Plaintiff's appeals or taking any immediate investigatory or corrective actions.

6.      In spite of the glaring conflict of interest and inherent breach of fiduciary duties, Defendants also agreed to an unlawful compensation structure for Cigna that financially rewards Cigna for wrongfully withholding and converting benefit claims.

7.      In addition to the "fee-forgiveness scheme", Defendants and Cigna also concocted another intricate scheme to abstract and embezzle Plan Assets. Abstraction of the Plan Assets are concealed by processing Plaintiff's out-of-network claim under a fabricated Viant Repricing Discount, even though Defendants and Cigna are fully aware of the fact that no such contract exists between Plaintiff and Viant.[4] Defendants allowed Cigna to convert the full Viant discounted amount from patient-Plan Beneficiary's Allowed Amount to Cigna's own use, all while concealing and intentionally misrepresenting to patient-Plan Beneficiary that is has converted the Viant discounted amount through informing patient-Plan Beneficiary that the Viant Discount is $0.00.[5]

8.      As a result of the wrongful claim denial schemes concocted by Defendants and Cigna, all of the transferred Plan Assets are ultimately misappropriated by Cigna to fraudulently pay itself with Defendants' withdrawn Plan Assets by falsely declaring the converted Plan Assets as compensation for itself generated through managed care and out-of-network cost containment "savings", when in truth and in fact, the claim was never paid to Plaintiff and the patient-Plan Beneficiary is left exposed to personal liability for the full amount of his unpaid medical bills.

9.      At the heart of this action is Defendants' wholesale failure to uphold their statutory

---

[4] ***Provider Explanation of Medical Payment Report*** - A0) HEALTH CARE PROFESSIONAL: WE [CIGNA] REDUCED THE ALLOWED AMOUNT BASED ON VIANT'S FACILITY BILL REVIEW PROGRAM. IF YOU HAVE QUESTIONS ABOUT THIS DISCOUNT CONTACT VIANT AT 866.233.0121. (See Exhibit A)

[5] ***Patient Explanation of Benefits*** – "Discount" - $0.00 – CIGNA negotiates discounts of your bill that's not covered by your plan. You may or may not need to pay this amount. See the Notes section on the following pages for more information. (See Exhibit B)

fiduciary duties owed to beneficiaries of the Plan. In direct violation of their statutory fiduciary duties, Defendants knowingly entered into an unlawful agreement with their co-fiduciary Cigna that blatantly ignores, overlooks, and even directly creates prohibited conflicts of interest, permitting Cigna to withhold and claim as compensation to itself amounts Cigna declares as "savings" to the Plan, "savings" that are, in truth, generated by wrongfully denying valid benefits claims. Thus, despite a clear, statutory bar to this type of prohibited, self-dealing transaction, Defendants agreed to a compensation structure that financially rewards Cigna for wrongfully denying even valid benefits claims – resulting in an arrangement where Cigna, a co-fiduciary, reprehensively competes with the Plan's own beneficiaries for entitlement to Plan Assets. Additionally, the amounts Cigna pays to itself are grossly excessive and fundamentally unfair.

10.     Despite actual knowledge of Cigna's self-dealing misconduct stemming from repeated alerts and warnings from Plaintiff's numerous official ERISA appeals, Defendants systematically refused to take corrective action, and instead, delegated investigation of the suspected embezzlement to Cigna – the identified perpetrator of the misconduct. Further, Defendants continued to promote, enable, authorize, and ratify Cigna's wrongful misappropriation of Plan Assets at the direct expense of the patient-Plan Beneficiary. Defendants violated their statutory fiduciary (and co-fiduciary) duties by promoting, encouraging, authorizing, assisting, and enabling Cigna, their designated agent and co-fiduciary, to unjustly enrich itself through an intricate embezzlement scheme that inflated Cigna's reported "savings" to the Plan, which Cigna in turn paid to itself as resulting from its "out-of-network cost containment" efforts.

11.     The overall harm caused by this embezzlement scheme spans universally, as it has likely caused misleading and inaccurate tax filings reported to the U.S. Department of Treasury, Internal Revenue Service, and Department of Labor Pension and Welfare Benefits Administration. Despite Plaintiff's efforts to alert Defendants of suspected errors and inaccuracies in their filings (such as inflated non-taxable benefits payments amounts believed to include plan funds retained by Cigna as a form of compensation), they were wholly ignored and Defendants refused to act.

12.     Instead of paying the valid benefits claims submitted by the Plan Beneficiary, through Plaintiff, Defendants systematically breached their statutory fiduciary duties and knowingly encouraged, enabled, assisted, and colluded with Cigna to engage in a scheme of self-dealing misconduct that permitted Cigna to wrongfully profit and embezzle plan funds through an unauthorized Viant discount and its questionable "fee-forgiveness protocol".

## II. Parties

13.     Plaintiff is the lawful Assignee and Claimant of the claims asserted herein. Plaintiff Red Oak Hospital, LLC (hereinafter "Plaintiff") is a Texas limited liability company that operates a hospital located at 17400 Red Oak Drive, Houston, Texas 77090. Plaintiff is headquartered in Harris County, Texas.  Plaintiff is the lawful assignee of the claims asserted herein.

14.     Defendant Macy's, Inc. (hereinafter "Plan Sponsor") is a multinational corporation with its global headquarters located in Cincinnati, Ohio. Plan Sponsor is a company specializing in the sale of product assortment, which includes apparel and accessories, cosmetics, home furnishings and other consumer goods. Plan Sponsor employs over 166,000 individuals worldwide, many of whom are residents of the greater Houston area.

15.     During all material times, Macys Inc. acted as the Plan Sponsor and Plan Administrator for Defendant Macys Self-Funded Welfare Benefits Plan ("the Plan"). Defendant Plan Sponsor may be served by serving its Plan Administrator at 7 W. 7th St. Cincinnati, OH 45202.

16.     Macys Inc. appointed its employee Defendant STEPHEN J. O'BRYAN as the Plan's official Plan Administrator, by and through his position as the Plan Administrator for the Plan. Defendant STEPHEN J. O'BRYAN resides and works in Cincinnati, Ohio and may be personally served at his usual place of business, at Macy's Inc. at 7 W. 7th St. Cincinnati, OH 45202.

17.     The Plan is a self-funded welfare plan governed by ERISA.  The Plan may be

served with process by serving its Plan Administrator at 7 W. 7th St. Cincinnati, OH 45202.

## II. Jurisdiction and Venue

18.     Plaintiff's claims arise *in part* under 29 U.S.C. §§1001 *et seq.,* Employee Retirement Income Security Act ("ERISA"), under 28 U.S.C. §1331 (federal question jurisdiction) including without limitation 29 U.S.C. §1132(a)(1)(B).

19.     Venue is appropriate in this Court under 29 U.S.C. §1391 because Plan Sponsor conducts a substantial amount of business in this district and employs and provides benefits to residents of this district.  Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district, such as:  the collection and contributions of premiums for the Plan, the making of promises and representations as to covered medical benefits to plan beneficiaries (who also work and reside in this district), the provision of health care services to plan beneficiaries, the making of promises and representations as to insurance coverage for those health care services, the filing of claims and appeals to the Plan, the exchange of correspondence relating to those claims appeals, and the decision making by fiduciaries of the Plan relating to the issuance of benefits and protection of plan funds.

## IV. FACTUAL BACKGROUNF AND ALLEGATIONS

### A. *Background as to Self-Insured Health Plans Governed by ERISA and OON Providers*

20.     Generally speaking, throughout America, individuals not eligible for Medicare or Medicaid typically obtain health insurance coverage through his or her own employer, or through a family member's employer. Those employers can provide health insurance on either a fully-insured or self-insured basis. When an employer provides fully-insured health insurance, the employer and/or employees pay premiums to a third party commercial insurance company, and the medical costs of the employees are paid using the insurance company's funds.

***Fully-Insured Plans***

**Risk**: In a fully insured plan, the employer pays a per-employee premium to an insurance company, and the insurance company assumes the risk of providing health coverage for insured events.

**Plan Characteristics**: In fully insured arrangements, premiums vary across employers based on employer size, employee population characteristics, and health care use. Premiums can also change over time within the same employer because of changes in the demographics of the employed group. However, employers are charged the same premium for each employee.

**Employer Size**: Small employers that offer health benefits are typically fully insured. In 2008, 88 percent of workers in firms with 3–199 employees were in fully insured plans. Smaller firms are typically located in one office or region (if they are on the large side of small).

**Market Share**: Overall, 45 percent of workers with health insurance were covered by a fully insured plan in 2008.[6]

21.     By contrast, when health insurance is offered by an employer on a self-insured basis, the employer assumes the risk for payment of the medical claims by sponsoring a benefits plan that forms a specific fund for that purpose. The resulting fund enjoys certain tax breaks, and is funded by the employer and/or employees who contribute premium payments. The health care claims of the enrolled employees and their dependents are then paid with the finances of the fund.

*Self-Insured Plans*

**Risk**: In a self-insured plan, instead of purchasing health insurance from an insurance company and paying the insurer a per-employee premium, ***the employer acts as its own insurer***. In the simplest form, the employer uses the money that it would have paid the insurance company and instead directly pays health care claims to providers. ***Self-insured plans often contract with an insurance company or other third party to administer the plan, but the employer bears the risk associated with offering health benefits.***

**Plan Characteristics**: Large employers often offer multiple self-insured health plans to different classes of workers. Benefits may vary for management and labor, and benefits may vary by occupation or even hours of work. Even when an employer offers a uniform benefits program across all locations and geographic regions, the cost of providing the program—commonly known as the premium equivalent— will vary because the cost of health care services is not uniform across the Cigna States.

**Employer Size**: In 2008, 89 percent of workers employed in firms with 5,000 or more employees were in self-insured plans.

---

[6] Employee Benefit Research Institute, Fast Facts, *Health Plan Differences: Fully-Insured vs. Self-Insured*, https://www.ebri.org/pdf/ffe114.11feb09.final.pdf.

*Market Share*: Overall, 55 percent of workers with health insurance were covered by a self-insured plan in 2008.[7]

22.     Unless exempted, self-insured health benefit plans are governed and regulated by the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"). Pursuant to ERISA, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details, such as the terms of eligibility for enrollees, the benefits covered, and more.[8]

23.     Often times, an employer (*i.e.* Plan Sponsor) who elects to have a self-insured health plan contracts with a third party commercial insurance company to oversee claims processing and other administrative services. The employer and the third party commercial insurance company, also known as the Third Party Administrator (hereinafter, "TPA"), enter into an Administrative Services Only ("ASO") contract or agreement.[9]

24.     Cigna is a third party commercial insurance company that provides TPA services to many self-insured plans under ASO contracts. In exchange for the payment of fees, Cigna provides claims processing and other administrative services to the plans, in addition to providing Plan Beneficiaries access to Cigna's network of providers. Cigna's network of providers is considered in-network because they enter into Preferred Provider Organization ("PPO") contracts with Cigna.[10]

25.     Pursuant to the PPO contracts between Cigna and its in-network providers, Cigna's

---

[7] *Id.*

[8] The US Department of Labor – Employee Benefit Security Administration provides details about the relationship between self-insured plans and ERISA.  U.S. Dept. of Labor, *Understanding Your Fiduciary Responsibilities Under A Group Health Plan,* https://www.dol.gov/ebsa/publications/ghpfiduciaryresponsibilities.html.

[9] An ASO contract is an arrangement in which an organization funds its own employee benefit plan such as a pension plan or health insurance program but hires an outside firm to perform specific administrative services. For example, an organization may hire an insurance company to evaluate and process claims under its employee health plan while maintaining the responsibility to pay the claims itself. Investopedia, *Administrative Services Only- ASO,* http://www.investopedia.com/terms/a/administrative-services-only.asp.

[10] A PPO is a type of health plan that contracts with medical providers, such as hospitals and doctors, to create a network of participating providers. You pay less if you use providers that belong to the plan's network. You can use doctors, hospitals, and providers outside of the network for an additional cost. HealthCare, *Preferred Provider Organization (PPO),* https://www.healthcare.gov/glossary/preferred-provider-organization-PPO/.

in-network providers are contractually obligated to: 1) collect patient responsibility amounts (copay, deductible, and co-insurance) from Cigna insureds, and 2) accept negotiated lower amounts for their services. In-network providers agree to the lower rates in exchange for a higher volume of patients that results from being part of Cigna's published managed care network. Thus, when a plan beneficiary receives health care services from an in-network provider, a Cigna administered Plan is only obligated to pay the in-network provider the negotiated amount set by the PPO contract.

26.     Critically, pursuant to the PPO contract between the in-network provider and Cigna, the in-network provider agrees to accept the lower negotiated rate as payment in full for the service. That is, under the PPO contract with Cigna, the in-network provider agrees to have no recourse against the patient for any difference in amount between the provider's normal charge for the procedure and the negotiated lower rate. In other words, by contract, the in-network provider is precluded from ever balance billing the patient.

27.     Since the amount owed by the Plan to the in-network provider is already determined by the pre-negotiated fee rates set by the PPO contract with Cigna, and because the PPO contract also precludes the in-network provider from ever balance-billing the patient, the in-network provider's request for payment from the Plan is deemed to be governed by the PPO contract, and is therefore not considered an ERISA claim for benefits.[11]

28.     By contrast, an out-of-network (hereinafter, "OON") provider has no contract with Cigna or the Plan, and is not contractually bound to collect patient responsibility amounts or accept the lower negotiated rates set forth by any PPO contract or fee schedule. Since there is no contract between the OON provider and Cigna or the Plan, the OON provider is free to "balance bill" the patient for any amounts unpaid by the Plan. This also means that the patient may be

---

[11]US Department of Labor Employee Benefits Security Administration – FAQ A-8: About the Benefit Claims Procedure Regulation – ERISA does not apply to in-network provider's claims for reimbursement when the provider has no recourse against the claimant for the amount in whole or in part not paid by the insurer or managed care organization. *See* U.S. Dept. of Labor, *FAQ: About the Benefit Claims*, http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html. (ERISA "does not apply to requests by

pursued and held personally liable by the OON provider for any amounts unpaid by the Plan.

29.     Plaintiff is an OON provider that has no contracts with either Cigna or the Plan. As an OON provider, Plaintiff is not subject to any limitations or agreements contained in any Cigna PPO contracts.

30.     Plan Sponsor is an employer that sponsors and administers the Plan, an ERISA governed, self-insured welfare benefit plan created to provide benefits to subscribed Plan Sponsor employees and the employees' enrolled dependents (hereinafter, collectively "Plan Beneficiaries").

31.     Each ERISA Plan promises its plan beneficiaries the freedom to receive and obtain reimbursement for health care services from his or her provider of choice. That is, the medical benefits covered by the Plan includes coverage for health care services from in-network and OON providers, permitting the Plan's beneficiaries to seek treatment from a doctor or facility of his or her choice.

32.     Under the terms of the Plan, the Plan is required to promptly pay benefits for OON services based upon the usual, customary and reasonable rate ("UCR") for that service in the same geographic area. Whenever the Plan pays less than one hundred (100%) of an OON provider's claim, the Plan's failure or refusal to pay the full amount of the OON provider's charges are deemed an Adverse Benefit Determination under ERISA.[12]

**B.     _Plaintiff's Benefits Claim has been Approved for Benefit Payment but Converted and Embezzled by Defendants, through Cigna_**

33.     Patient X is a Plan Beneficiary (*i.e.* covered individual) under the terms and conditions of the Plan, and is entitled to medical benefits **_as determined by the Plan_**.[13] That is, if the Defendants, through Cigna, make the determination that the services Patient X receives are

---

[12] US Department of Labor Employee Benefits Security Administration -FAQC-12:About the Benefit Claims Procedure Regulation - Under ERISA, an adverse benefit determination generally includes any denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for ,a benefit. In any instance where the plan pays less than the total amount of expenses submitted with regard to a claim, while the plan is paying out the benefits to which the claimant is entitled under its terms, the claimants nonetheless receiving less than full reimbursement of the submitted expenses, and is treated as an adverse benefit determination. U.S. Dept. of Labor, *FAQ: About the Benefits Claims Procedure Regulation*, http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html.

[13] Patient X is a Plan Beneficiary under the terms and conditions of the Plan, and, in accordance with HIPAA, his name shall remain confidential.

indeed covered services under the Plan and the covered services are deemed medically necessary, then the Defendants, through Cigna, shall make a determination as to how much to pay Plaintiff for providing services to Patient X.

34.    Typically, before providing healthcare services to patients, Plaintiff verifies through Defendants' TPA, Cigna, that the patient does indeed have OON benefits. This pre-service verification procedure is not only common practice amongst most healthcare provides, but is even more imperative as Plaintiff is a OON provider and must ensure that each patient has OON benefits prior to performing any service.

35.    In Patient X's case, Patient X came to Plaintiff seeking emergency services and treatment, and, in accordance with the federal Emergency Medical Treatment and Active Labor Act (EMTALA), Plaintiff serviced and treated Patient X as an emergency room patient. Under ERISA, in emergency cases, a provider is not required to obtain prior authorization from an insured patient's provider, nor can an insurance provider refuse payment to an OON provider even if the patient does not have OON benefits. Cigna's Healthcare Policies state:

> No Cigna HealthCare participant regardless of plan type (Network, POS, EOP, PPO or Indemnity) is required to get prior authorization before seeking treatment in an emergency room in a situation in which a "prudent layperson" would believe such emergency care is required…regardless of the nature or severity of the illness or injury, the claim will be covered…  No authorization or referral is required by any Cigna HealthCare medical plan for emergency care. If you believe life or limb are at risk, don't delay. Go directly to the nearest emergency facility or notify your local emergency services immediately.[14]

36.    Before receiving services from Plaintiff, Patient X executed a Legal Assignment of Benefits and Designation of Authorized Representative form on March 10, 2016, to designate and assign Plaintiff to be a statutorily defined "Claimant", by assigning Plaintiff rights to receive benefit payments directly and conduct administrative appeals, seek judicial review for benefits claims, breach of fiduciary duty, statutory penalties for failure to provide Plan Documents and any

---

[14] Cigna Healthcare Policies -  http://www.cigna.com/cigna-healthcare-policies

equitable remedies under the law.[15]

37.     After receiving assigning Plaintiff as his Claimant, Plaintiff provided healthcare services to Patient X, and Patient X incurred eligible and reasonable medical expenses on March 10, 2016. Being that Patient X incurred eligible and reasonable expenses, Plaintiff submitted healthcare claims to Defendants, through Cigna for determination and to be reimbursed for the services Plaintiff provided to Patient X.

38.     Typically, the Plan co-fiduciary, Cigna, as the TPA, is solely authorized by Defendants to make eligible Allowed Amount determinations on behalf of Defendants for every claim that is submitted. After Cigna makes an Allowed Amount determination, Plaintiff is to be paid through the Plan Assets the Allowed Amount minus any  of Patient X's out-of-pocket expenses (hereinafter, "Entitled Amount").[16]

39.     In this case, Defendants, through Cigna, applied an unauthorized Viant discount to bring the Entitled Amount owed to Plaintiff lower, even though no contract or agreement was in place between Plaintiff and Viant and Plaintiff did not engage in any negotiation with Viant regarding Patient X to authorize the Viant discount (hereinafter, "Viant Discount Amount"). ***Then***, after applying the unauthorized Viant discount, rather than make payment to Plaintiff for the Viant Discount Amount for services provided to Patient X, Defendants, through Cigna, issued multiple fraudulent checks that were received by both Cigna and Plaintiff. Prior to Plaintiff receiving its check for the Viant Discount Amount on  May 6 2016, Cigna received the same check and cashed it for its own benefit on May 4, 2016, and placed a "Stop Payment" on the check  issued to Plaintiff so that Plaintiff could not cash it. Defendants, through Cigna, went on to inform Plaintiff that payment was denied, in full, due to its "Fee-Forgiveness Protocol." Defendants, through Cigna, fraudulently deceived Plaintiff and Patient X by informing Plaintiff that the Entitled Amount owed

---

[15] The Legal Assignment of Benefits and Plaintiff's Standing is discussed in detail in Section IV(C).

[16] Out of Pocket expense include deductible, co-pays, co-insurance. Please see Cigna's website for explanation of the out of pocket expense terms - http://www.cigna.com/individuals-families/copays-deductibles-and-coinsurance-explained

to Plaintiff was "Denied" as a result of Plaintiff's "failure" to collect the patient's out of pocket expenses, while simultaneously informing the Patient X that his patient obligation is $0.00 and owed Plaintiff no out of pocket expenses, and informing Patient X that the discount amount was also $0.00.

40.     Defendants knew or should have known that when the Defendants, through Cigna, officially determined an Allowed/Entitled Amount to be paid to Plaintiff for services provided to Patient X, then that Entitled Amount should be paid to Plaintiff, and not the unauthorized discounted amount; especially, since Defendants knew or should have known that Plaintiff neither has a contract with Viant nor negotiated Patient X's claim with Viant **and** that a check for the Viant Discounted Amount was drawn from the Plan's Trust Account using Plan Assets, and as a result of the check being drawn, Plaintiff is the entitled recipient of the check under the terms and conditions of the Plan and as the authorized Claimant of the Plan Beneficiary, in addition to the difference between the Entitled Amount and the Viant Discount Amount.

41.     Defendants knew or should have known that it is both fraudulent and deceptive for the co-fiduciary, Cigna, to cash a benefits payment check for its own benefit that was meant for the Plaintiff-Claimant, and then fraudulently place a "Stop Payment" on the benefit check issued to Plaintiff before Plaintiff could deposit it and reimburse itself for the services it provided to Patient X.

42.     Additionally, Defendants, through Cigna, made official and certified representations to Plaintiff and Patient X that Patient X's cost sharing obligation is $0.00, and that Plaintiff shall not collect from Patient X any of its cost sharing obligation in accordance with the terms of the Plan. Therefore, if Plaintiff is informed by Defendants, through Cigna, that it cannot collect from Patient X his cost sharing obligation, and Patient X is not obligated to pay Plaintiff his cost sharing obligation because he has been notified that his cost sharing obligation is $0.00, then there is nothing for Plaintiff to "forgive" or collect from Patient X and Plaintiff should receive the full Entitled Amount, not just the Viant Discount Amount, that Plaintiff was discounted then denied

due to its "fee-forgiveness protocol".

43.     On May 6, 2016, Plaintiff received the Provider Explanation of Medical Payment (hereinafter, "Provider EMP") and the Provider EMP Report, where Defendants, through Cigna, made the final determination that Plaintiff's claim for ***$38,413.92*** ("Billed Amount") was adjudicated by Defendants, through Cigna, and was allowed for ***$18,561.89*** ("Allowed Amount").[17] Defendants, through Cigna, on the Provider EMPR Report informed Plaintiff through Reason Code/Note informed Plaintiff that the Allowed/Entitled Amount had been reduced via the unauthorized Viant Discount in the amount of $3,712.39:

> A0) HEALTH CARE PROFESSIONAL: WE [CIGNA] REDUCED THE ALLOWED AMOUNT BASED ON VIANT'S FACILITY BILL REVIEW PROGRAM. IF YOU HAVE QUESTIONS ABOUT THIS DISCOUNT CONTACT VIANT AT 866.233.0121.

Thus, the Entitled Amount owed to Plaintiff after the Viant discount was $14,849.50, as certified by the Provider EMP and the Provider EMP Report, even though Plaintiff neither had a contract with Viant to allow Defendants to unilaterally reduce payment, nor did Plaintiff negotiate Patient X's claim with Viant. Enclosed with the Provider EMP, came ***Check Number "00377676657"*** with the ***Check Amount being "14,849.50"*** (again certifying the amount to be paid to Plaintiff) dated April 30, 2016, and the Provider EMP Report also states, "***Payment of $14,849.50 to Red Oak Hospital [Plaintiff]***." ***Below, incorporated into this Complaint, are portions of the Provider Explanation of Medical Payment and Provider Explanation of Medical Payment Report produced to Plaintiff on May 6, 2016, that highlights the evidence discussed in this paragraph[18]:***

---------THIS SECTION IS INTENTIONALLY LEFT BLANK----------

---

[17] Note that on the Check issued to Plaintiff on April 30, 2016, states: "Cigna Health and Life Insurance Company as Agent for Macy's Inc."

[18] Full and complete copies of the Provider Explanation of Medical Payment and Provider Explanation of Medical Payment Report produced to Plaintiff on May 6, 2016, are attached to this Complaint as Exhibit A



## Payment Summary

| Check Number: 00377676657 | Check Amount: $14,849.50 | Check Date: 04/30/2016 |
|---|---|---|

G2434C 06-28-2006 PROCLAIM Medical Provider EOP

Detach on Perforation Below - Please Cash Promptly

**Cigna**

**Cigna Health and Life Insurance Company**
AS AGENT FOR
MACY'S INC.

CHECK #
00377676657
62-20/311

| | DATE | Provider # |
|---|---|---|
| PayLoc 065 | 04/30/2016 | 454432712 0000 |

FOURTEEN THOUSAND EIGHT HUNDRED FORTY NINE DOLLARS AND 50 CENTS

Pay REDOAK HOSPITAL
to the 17600 RED OAK DR
Order HOUSTON TX 77090-1246
of

Dollars $ ×××××14,849.50

*Void If Not Cashed Within 180 Days*

CITIBANK DELAWARE
NEW CASTLE, DELAWARE

3202600

Benjamin F. Chestnut

G2434C 06-28-2006 PROCLAIM Medical Provider EOP

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK
ON THE BACK. HOLD AT AN ANGLE TO VIEW.

⑈377676657⑈ ⑆031100209⑆ 40008488⑈



**Provider Explanation of Medical Payment Report**

Cigna

| Provider Number | Provider Name | | | | | | | | Date through which claims were processed | | | | THIS IS NOT A BILL | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 454432712 0000 | REDOAK HOSPITAL | | | | | | | | 04/26/2016 | | | | Retain for Your Records | 1 |

| Line | Procedure Date | Procedure Code | Adjusted Procedure Code | Billed Amount | Adjusted Procedure Code Amount | Allowed Amount | Not Covered/ Discount | Deduct/Copay Amount | Coinsurance Amount | DRG/ Per Diem / APC Type | DRG/ Per Diem / APC Number | DRG/Per Diem Amount | DRG/ Per Diem Benefit Amount | Plan Benefit | See Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Reminder: A coverage determination, prior authorization, or certification that is made prior to a service being performed is not a promise to pay for the service at any particular rate or amount. The patient's summary plan description governs amount payable, as every claim submitted is subject to all plan provisions, including, but not limited to, eligibility requirements, exclusions, limitations, and applicable state mandates.

PATIENT NAME:              PATIENT#: 21625001        OPERATION LOCATION/GROUP# 25348-9-3202600 RECEIVE DATE: 03/31/2016 PROCESS DATE: 04/26
MEMBER NAME:              SUBSCRIBER#: U56762059        REF#: 065169912N2S7            CHECK#: 00377676657

| 1 | 03102016 | 00300 | | 1547.00 | | 585.92 | 541.08 | | 101.18 | | | 0.00 | 0.00 | 484.74 | A8 |
| 2 | 03102016 | 00300 | | 396.00 | | 188.45 | 201.55 | | 37.69 | | | 0.00 | 0.00 | 150.76 | A8 |
| 3 | 03102016 | 00300 | | 879.00 | | 424.74 | 454.26 | | 84.95 | | | 0.00 | 0.00 | 339.79 | A8 |
| 4 | 03102016 | 00300 | | 573.00 | | 276.88 | 296.12 | | 55.38 | | | 0.00 | 0.00 | 221.50 | A8 |
| 5 | 03102016 | 00300 | | 695.00 | | 336.86 | 358.14 | | 66.97 | | | 0.00 | 0.00 | 267.89 | A8 |
| 6 | 03102016 | 00300 | | 903.00 | | 436.34 | 466.66 | | 87.27 | | | 0.00 | 0.00 | 349.07 | A8 |
| 7 | 03102016 | 00309 | | 516.00 | | 249.34 | 266.66 | | 49.87 | | | 0.00 | 0.00 | 199.47 | A8 |
| 8 | 03102016 | 00300 | | 765.00 | | 369.65 | 395.35 | | 73.93 | | | 0.00 | 0.00 | 295.72 | A8 |
| 9 | 03102016 | 00300 | | 494.00 | | 216.54 | 229.46 | | 42.91 | | | 0.00 | 0.00 | 171.63 | A8 |
| 10 | 03102016 | 00300 | | 558.00 | | 269.63 | 288.37 | | 53.93 | | | 0.00 | 0.00 | 215.70 | A8 |
| 11 | 03102016 | 00324 | | 1317.00 | | 636.58 | 680.42 | | 127.28 | | | 0.00 | 0.00 | 509.10 | A8 |
| 12 | 03102016 | 00340 | | 9908.92 | | 4788.86 | 5120.06 | | 957.61 | 2 | | 0.00 | 0.00 | 3830.45 | A8 |
| 13 | 03102016 | 00462 | | 4793.00 | | 2316.01 | 2476.99 | | 463.20 | | | 0.00 | 0.00 | 1852.81 | A8 |
| 14 | 03102016 | 00450 | | 5276.00 | | 2548.44 | 2725.56 | | 509.69 | | | 0.00 | 0.00 | 2038.75 | A8 |
| 15 | 03102016 | 00483 | | 1080.00 | | 521.86 | 558.14 | | 104.37 | | | 0.00 | 0.00 | 417.49 | A8 |
| 16 | 03102016 | 00482 | | 4631.00 | | 2341.09 | 2289.91 | | 428.22 | | | 0.00 | 0.00 | 1712.87 | A8 |
| 17 | 03102016 | 00636 | | 3846.00 | | 1782.15 | 1841.85 | | 344.43 | | | 0.00 | 0.00 | 1377.72 | A8 |
| 18 | 03102016 | 00762 | | 1228.00 | | 612.55 | 449.45 | | 123.51 | | | 0.00 | 0.00 | 486.06 | A8 |
| | **TOTAL** | | | 38413.92 | | 18541.89 | 19852.03 | | | | | | | 14849.50 | |

THE $5,000 IN NETWORK FAMILY DEDUCTIBLE HAS BEEN SATISFIED FOR THE POLICY YEAR BEGINNING
07/01/2015
$5,556.78 HAS BEEN APPLIED TOWARDS THE $6,000 OUT OF NETWORK FAMILY DEDUCTIBLE FOR THE POLICY
YEAR BEGINNING 07/01/2015
$7,448.16 HAS BEEN APPLIED TOWARDS THE $9,000 IN NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR THE
POLICY YEAR BEGINNING 07/01/2015
$7,448.16 HAS BEEN APPLIED TOWARDS THE $18,000 OUT OF NETWORK FAMILY 'OUT-OF-POCKET LIMIT' FOR
THE POLICY YEAR BEGINNING 07/01/2015

BALANCE................... $3,712.59
VIEW ELIGIBILITY, BENEFITS, AND CLAIM DETAILS AND GET PRECERTIFICATION ANSWE
RS FAST AT THE CIGNA FOR HEALTH CARE PROFESSIONALS WEBSITE (WWW.CIGNAFORHCP.
COM)

PAYMENT OF   $14,849.50 TO REDOAK HOSPITAL

H07 DGP

A8) HEALTH CARE PROFESSIONAL: WE REDUCED THE ALLOWED AMOUNT
BASED ON VIANT'S FACILITY BILL REVIEW PROGRAM. IF YOU
HAVE QUESTIONS ABOUT THIS DISCOUNT CONTACT VIANT AT
866.233.0121.

44.     Patient X, Defendants' Plan Beneficiary, also received from Defendants, through Cigna, a *fraudulent and inconsistent* Patient Explanation of Benefits (hereinafter, "Patient EOB") from the Provider EMP and Provider EMP Report, in order to conceal its conversion and embezzlement scheme. Although the Billed Amount by Plaintiff remains consistent on the documents, the Allowed Amount on the Patient EOB is not represented, and instead states that the full Billed Amount of $38,413.92 is the not covered amount, even though the Provider EMP and Provider EMP Report both certify that Defendant has withdrawn money from the Plan Assets with *Check Number "00377676657"* to be paid to Plaintiff but Plaintiff *never* received this check. Additionally, the Patient EOB shows that there was a $0.00 discount, even though the Provider EMP Report shows, through the "A0" note, that a discount was withheld in the amount of $3,712.39 which brought the Allowed/Entitled Amount of $18,561.89 down to the Viant Discount Amount of $14,849.50.[19] The Patient EOB also represents to Patient X that the Plan paid $0.00 to Plaintiff, when in fact a check was issued to Plaintiff, and cashed by Cigna. Finally, the Patient EOB represents to Patient X "What [He] Owes", which is $0.00, so if Defendants, through Cigna, represent to Patient X that he has no cost-sharing obligation, then there is nothing for Plaintiff to "forgive" or to collect from Patient X and Plaintiff should receive the full Entitled Amount that it was denied due to its "fee-forgiveness protocol", and not just the Viant Discount Amount. Defendants and Cigna knew or should have known that the Patient EOB is *fraudulent and not* the true and correct explanation of Patient X's benefits because of all the inconsistencies discussed in this paragraph, and the simple fact that *Check Number "00377676657"* was issued to Plaintiff even though Cigna represented to Patient X that no payment was ever made, and that Defendants had actual knowledge that a stop payment was placed on *Check Number "00377676657"* and Plaintiff could not cash it. *Below, incorporated into this Complaint, is a portion of the Patient*

---

[19] Cigna defines a "Discount" on the Patient EOB as: Cigna negotiates discounts with health care professionals and facilities to help save you money. Using an in-network option is one way you can save. Visit myCIGNA.com or call Customer Service to learn more.

*EOB produced to Patient X that highlights the evidence discussed in this paragraph[20]:*



**Explanation of benefits**

MACY'S, INC. / 3202600

for a claim received for ▮▮▮▮▮▮▮, Reference # 0651609124257

Summary of a claim for services on March 10, 2016

for services provided by REDOAK HOSPITAL

| Amount Billed | $38,413.92 | This was the amount that was billed for your visit on 03/10/2016. |
| Discount | $0.00 | CIGNA negotiates discounts with health care professionals and facilities to help you save money. Using an in-network option is one way you can save. Visit myCIGNA.com or call Customer Service to learn more. |
| Amount not covered | $38,413.92 | This is the portion of your bill that's not covered by your plan. You may or may not need to pay this amount. See the Notes section on the following pages for more information. |
| What your plan paid | $0.00 | Your plan paid $0.00. This is a correction of a previously processed claim. |
| What I owe | $0.00 | This is the amount you owe after your discount, your plan paid, and what your accounts paid. People usually owe because they may have a deductible, have to pay a percentage of the covered amount, or for care not covered by their plan. Any amount you paid since care was received may reduce the amount you owe. |

45.     Plaintiff, on May 6, 2016, generated a Cigna Claim Details sheet (hereinafter, "Claim Sheet") that details the information of the claim, the payment to Plaintiff, and the procedures provided to Patient X on March 10, 2016. This Claim Sheet generated through Cigna is also ***fraudulent and inconsistent*** because it contradicts the information contained and highlighted in the Provider EMP, Provider EMP Report, and the Patient EOB. Although the Billed Amount by Plaintiff remains consistent through all of the documents, the Allowed Amount on the Claim Sheet $0.00 and states that the full Billed Amount of $38,413.92 is the not covered amount, even though the Provider EMP and Provider EMP Report both certify that Defendant had withdrawn money with ***Check Number "00377676657"*** to be paid to Plaintiff but stopped payment on the Check before Plaintiff could ever cash it. In the Detail Sheet, the "Remark Code - 0322" (*i.e.* denial code) states:

> CHARGES WHICH YOU ARE NOT OBLIGATED TO PAY OR FOR WHICH YOU ARE NOT BILLED OR FOR WHICH YOU WOULD NOT HAVE BEEN BILLED EXCEPT THAT THEY WERE COVERED UNDER THE PLAN ARE NOT COVERED. CIGNA WILL RECONSIDER THIS CLAIM ONCE WE SEE PROOF OF PAYMENT.

---

[20] A full and complete copy of the Patient Explanation of Benefits is attached to this Complaint as Exhibit B.

Through this Remark Code, Cigna triggers its fraudulent "fee-forgiveness protocol", and makes an adverse benefit determination that results in Plaintiff receiving $0.00 on Patient X's claim. **However**, the Detail Sheet certifies that "***Check 00377676657***" was drawn from the Plan Assets in Viant Discount Amount of $14,849.50 and issued to Plaintiff at Plaintiff's place of business on April 30, 2016, and was cleared on May 4, 2016, even though the Check was not received by Plaintiff until May 6, 2016, was not deposited by Plaintiff until May 13, 2016, and there was a Stop Payment placed on the Check as certified by the Regions Bank Returned Deposited Item Notice.[21]

Finally, the Claims Sheet shows that Patient X's "Patient Responsibility" is $0.00, so if Defendants, through Cigna, represents to Patient X that he has no cost-sharing obligation, then there is nothing for Plaintiff to "forgive" or to collect from Patient X and Plaintiff should receive the Entitled Amount that it was denied due to its "fee-forgiveness protocol".  Defendants and Cigna knew or should have known that the Details Sheet is ***fraudulent and not*** the true and correct explanation of Patient X's benefits claim because of all the inconsistencies discussed in this paragraph, and the simple fact that ***Check Number "00377676657"*** was issued to Plaintiff even though Cigna represented to Patient X that no payment was ever made, and that Defendants had actual knowledge that a stop payment was placed on ***Check Number "00377676657"*** and Plaintiff could not cash it. ***Below, incorporated into this Complaint, is the Details Sheet generated on May 6, 2016, that highlights the evidence discussed in this paragraph[22]:***

----------THIS SECTION IS INTENTIONALLY LEFT BLANK----------

---

[21] The Deposit Slip, Check, and Regions Bank Returned Deposited Item Notice is attached to this Complaint as Exhibit C.
[22] A full and complete copy of the Cigna Claim Details Sheet is attached to this Complaint as Exhibit D.

## Claim Details

| | |
|---|---|
| Claim/Reference Number: | 0651609124257 |
| Claim Status: | Denied |

### Claim Information

| | | Payment Information | |
|---|---|---|---|
| Claim/Reference Number: | 0651609124257 | Patient Responsibility: | $0.00 |
| Patient Name: | [redacted] \| View Coverage | Claim Amount Paid: | $0.00 |
| Provider Generated Patient Account Number: | 11625001 | | |
| Service Providers: | /REDOAK HOSPITAL | | |
| Date Received: | 03/31/2016 | | |
| Date Processed: | 05/06/2016 | | |
| HIPAA Status: | F2: 1 | | |

### Payment Details

Checks that indicate a paid amount greater than the paid amount listed in the details above indicate a bulk payment made to the provider that includes payments for other claims.

| Payee's Name | Payee's Address | Check Amount | Check Number | Check Status | Check Issued | Check Cleared | Payment Method |
|---|---|---|---|---|---|---|---|
| /REDOAK HOSPITAL | 17400 RED OAK DR HOUSTON, TX 77090-1246 | $14,849.50 | 377676657 | Stopped | 04/30/2016 | 05/04/2016 | Check |

### Procedures

| Procedure Code | Dates of Service | Amount Charged | Allowed Amount | Amount Not Covered | Deductible/ Copay Applied | Covered Balance | Plan Coinsurance Paid | Patient Coinsurance | Patient Responsibility | Rema Code |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | $0.00 | $0.00 | | |
| 0762 | 03/10/2016 | $1,278.00 | $0.00 | $1,278.00 | $0.00 | $0.00 | 0%= $0.00 | 100%= $0.00 | $0.00 | 0322 |
| Totals | | $38,413.92 | $0.00 | $38,413.92 | $0.00 | $0.00 | $0.00 | | $0.00 | |

### Explanation of Remark Codes

0322 - $1,047.00, $390.00, $879.00, $573.00, $693.00, $903.00, $516.00, $765.00, $444.00, $558.00, $1,317.00, $9,908.92, $4,793.00, $5,274.00, $1,080.00, $4,431.00, $3,564.00, $1,278.00 SEE THE EXCLUSIONS PAGE OF YOUR CIGNA-ADMINISTERED PLAN DOCUMENT: CHARGES WHICH YOU ARE NOT OBLIGATED TO PAY OR FOR WHICH YOU ARE NOT BILLED OR FOR WHICH YOU WOULD NOT HAVE BEEN BILLED EXCEPT THAT THEY WERE COVERED UNDER THE PLAN ARE NOT COVERED. CIGNA WILL RECONSIDER THIS CLAIM ONCE WE SEE PROOF OF YOUR PAYMENT.

This information reflects our data when the claim was processed. It may not reflect the final patient coinsurance due to other pending claims processing activities.

46.    Based on the fact that **Check Number "00377676657"** was cleared on May 4, 2016, **but** the same **Check Number "00377676657"** issued to Plaintiff was stopped, this evidences to the fact that Cigna withdrew the Viant Discount Amount from the Plan Assets and cashed the Check for its own benefit, while also pocketing the difference between the Allowed/Entitled Amount and the Viant Discount Amount, then immediately placed a stop payment on the Check issued to

Plaintiff and denied the amount pursuant to its "fee-forgiveness protocol." Defendants knew or should have known that its co-fiduciary, Cigna, withdrew from the Plan's Trust Account the amount of $14,849.50 using **Check Number "00377676657"**, cashed the check for itself, and converted Defendants' Plan Assets for its own use without ever making payment to Plaintiff on Patient X's claim. Defendants knew or should have know that Cigna had abstracted and converted their Plan Assets and misused Patient X's benefit entitlements to Cigna's own use, and that this act is a breach of fiduciary duty against the best interest of the Plan Beneficiary and the Plan under ERISA. This is especially true since Defendants had actual knowledge of this illicit activity through an Appeal Letter sent to Defendants from Plaintiff dated June 3, 2016, and were provided with a notice/courtesy copy on June 3 2016, by Plaintiff of a Department of Labor Complaint filed on June 3, 2016 with Complaint Number 201663-14394.

47.    Defendants knew or should have known that the Provider EMP, the Provider EMP Report, the Patient EOB, and/or the Cigna Claim Detail Sheet were inconsistent and/or fraudulent given the discrepancies in the documents discussed in paragraphs 43, 44, and 45.  Defendants continue to ignore or cover-up this type of fraudulent practice even after receiving repeated, notices, appeals, and correspondence from Plaintiff that Cigna is a suspected perpetrator of engaging in statutory prohibited self-dealing and embezzlement through the use of an illicit "fee-forgiveness" scheme. Defendants knew or should have known of the legal and financial conflict of interest created by Cigna's self-dealing; however, Defendants continued to authorize, conspire, and orchestrate with Cigna to investigate the alleged violations, as opposed to investigating the actions itself as it is Defendants' duty to safeguard the Plan Assets in the best interest of the Plan Beneficiary. Instead, Defendants colluded with Cigna and conspired to serve the best interest of the Plan co-fiduciary, Cigna.

48.    Defendants knew or should have know that they had the ***responsibility and duty to investigate*** and unilaterally determine, ***without the assistance of Cigna***, if Plaintiff's suspicions and allegations were accurate and true, especially after Defendants received notice that Plaintiffs

had filed a Complaint with the Department of Labor.

49.     Defendants failed to and intentionally waived any rights to officially correct Plaintiff's statement of facts with respect to the Plan, Provider EMP, the Provider EMP Report, the Patient EOB, and/or the Cigna Claim Detail Sheet by refusing to disclose any and all Plan Documents or providing any additional information regarding "*Check Number "00377676657"*", in order to rule out any misunderstanding or to exclude any allegations of embezzlement. Instead, Defendants and Cigna continue to maintain and support its actions of extracting, withholding, and converting Plan Assets/Patient X's benefit payments owed to Plaintiff as Patient X's authorized claimant, as prohibited under 18 U.S.C. § 664 and 29 U.S.C.§1106.

### *18 U.S. C. § 664 - Theft or Embezzlement from Employee Benefit Plan*

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

### *29 U.S.C. § 1106 – Prohibited Transactions*

*Transactions between Plan and Party in Interest* – A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

*Transactions between Plan and Fiduciary* – A fiduciary with respect to a plan shall not – (i) deal with the assets of the plan in his own interest or for his own account, (ii) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of in participants or beneficiaries, or (iii) receive and consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

50.     It is important to note that Plaintiff is ***not disputing*** the aforementioned facts that (i) Plaintiff ***received proper verification*** from Defendants, through Cigna, to provide services to Patient X since Patient X was seen in emergency circumstances; (ii) Defendants, through Cigna,

*internally adjudicated* Plaintiff's claim for benefits and *came to a determination* that that the

Allowed Amount/Entitled Amount for Patient X was to be paid to Plaintiff to reimburse Plaintiff

for the service Plaintiff provided to Patient X; and (iii) the amount of the Allowed Amount/Entitled

Amount determined by Defendants, through Cigna, are incorrect.

51.      Plaintiff, in addition to the discrepancies and issues surrounding the check discussed

in paragraph 43, is disputing the fact that the Entitled Amount should not have been reduced

because Plaintiff does not have a contract with Viant permitting Viant to unilaterally reduce

Allowed/Entitled Amounts, nor did Plaintiff negotiate Patient X's claim with Viant to reduce the

Entitled Amount.

52.      Plaintiff sent an Administrative Appeal Letter to Defendants on June 3, 2016,

informing Defendants of all of the above mentioned allegations, and, within the context of the

detailed Appeal, Plaintiff provided Defendants with facts and documentation to support any and all

allegations Plaintiff has made within this Complaint. Included within the Appeal Letter, Plaintiff

requested any and all documents relevant to Patient X's claim that Plaintiff is entitled to under

ERISA, but no documents were sent in response. Plaintiff has completely and unequivocally

exhausted any and all administrative appeal requirements, and any further communications or

appeal efforts with Defendants will be fruitless.

53.      Defendants failed to, in accordance with 29 C.F.R. 2560.203-1, provide Plaintiff-

Claimant with written or electronic notification of any adverse benefit determination which should

have included:

> (i) the specific reason or reasons for the adverse determination; (ii) reference to the
> specific plan provisions on which the determination is base; (iii) a description of any
> additional material or information necessary for the claimant to  perfect the claim
> and an explanation of why such material or information is necessary; (iv) a
> description of the plan's review procedures and the time limits applicable to such
> procedures including a statement of the claimant's right to bring a civil action under
> section 502(a) of the Act following an adverse benefit determination on review; and
> (v) any additional information free of charge upon request.

54.     Defendants knew or should have known that ERISA statute regulations provide "claimants" a right to bring a civil action in accordance with 29 C.F.R. 2560.203-1(b)(4):

> The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.

Plaintiff has exhausted any and all administrative appeal requirements and brings a civil action as the authorized representative-claimant of Patient X.

55.     Defendants and Cigna have always had the opportunity to challenge the validity of the Assignment of Benefits received by Defendants, but have chosen not to challenge the scope and validity of the Assignment of Benefits; therefore, Defendants have waived its right to challenge the validity and scope of the Assignment of Benefits by failing to do so in the administrative appeals process.

56.     Defendant knew or should have known that ERISA claim regulation prohibit any anti-assignment language and guarantees claimants with ERISA full and fair review rights:

> The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.

Defendants have continuously failed to provide Plaintiff-claimant, with a valid and unchallenged full and fair review that Plaintiff is guaranteed under ERISA because Defendants have delegated the Plan co-fiduciary, Cigna, to pay Plan Assets to its own account against the Plaintiff-claimant's rights under the Plan, thus creating an absolute conflict of interest.

### *C.     Plaintiff as Authorized Representative-Claimant of Patient X*

57.     Plaintiff is an OON provider who routinely treats Cigna beneficiaries, either through self-insured plans or fully-insured plans. As an OON provider, Plaintiff has no contract with Cigna nor has never entered into a Cigna PPO Contract. Patient X has entered into an agreement with Plaintiff pursuant to which Patient X agrees that they are liable to Plaintiff for any amounts billed by Plaintiff that Defendants, through Cigna, fail to pay, in accordance with the terms and conditions of the Plan.

58.      On March 10, 2016, Patient X signed a ***Legal Assignment of Benefits and***

***Designation of Authorized Representative*** (hereinafter, "Assignment"), which includes the

following statement explicitly authorizing Plaintiff to bring legal actions under ERISA[23]:

> In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand that I am financially responsible for all charges regardless of any applicable insurance or benefit payments. I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.

> I hereby convey to the above named provider(s), to the full extent permissible under the law and under any applicable employee group health plan(s), insurance policies or liability claim,  any claim, chose in action, or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s) under any applicable insurance policies, employee benefits plan(s) or public policies with respect to medical expenses incurred as a result of the medical services I received from the above named provider(s), and to the full extent permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including, but are not limited to, (1) obtaining information about the claim to the same extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses. Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws. A photocopy of this assignment is to be considered as valid as the original.  I have read and fully understand this agreement.

59.      Through the Assignment, Patient X assigned Plaintiff all relevant rights hereunder,

including: i) the right to be paid directly by the Plan; ii) the right to challenge and appeal the

amount of reimbursement; iii) the right to pursue litigation including all ERISA causes of action

---

[23] A copy of Patient X's Assignment of Benefits is attached to this Complaint as Exhibit E.

(including breach of fiduciary claims); and iv) the right to receive all relevant plan documents (Summary Plan Descriptions, Master Plan Documents, Claim Files, Administrative Files, Financial Reports, among other documents and information) as if Plaintiff was the member, participant, or beneficiary of the Plan. This Assignment is unrestricted and unrevoked and it serves to place Plaintiff in the same position as the Assignor-Patient. Through this Assignment, Plaintiff serves as the Assignor-Patient's authorized representative and therefore is qualified as a claimant under the Patient Protection and Affordable Care Act, 29 CFR § 2590.715.

60.     During the patient registration process, prior to receiving health care services from Plaintiff, Patient X was made aware of the fact that Plaintiff is an OON provider and of the potential additional costs and possible balance billing that may ensure when receiving services from an OON provider. Patient X signed various forms acknowledging his understanding of the fact that Plaintiff is an OON provider and of his personal financial responsibility for the amounts charged by Plaintiff that he remained fully obligated for all uncovered portions of the claim.

61.     Plaintiff is informed and believes that such Assignment is not barred by the Plan, but that even if the Plan purported to bar such Assignments, then that bar would be void or voidable because:

i.      The Assignments make Plaintiff the Authorized Representative of Patient X for purposes of asserting a benefit (*i.e.*, payment under the Plan or pursing an appeal from an adverse benefit determination). The following regulations were adopted pursuant to ERISA and the Patient Protection and Affordable Care Act (hereinafter, "ACA") and pursuant to:

***29 C.F.R. §2560.503-1(b)(4)***

[T]he Plan shall not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.

*29 C.F.R. §2590.715-2719(a)(2)(iii)*

"For purposes of [that] section, references to claimant include a claimant's authorized representative.

ii.     The Defendants and Cigna have dealt directly with Plaintiff with Defendants and Cigna actual knowledge of the Assignment, while never making any objection to the Assignment, and without giving any notice of any Plan Prohibition on assignment. Defendants, through Cigna, have also pre-authorized services or procedures directly with Plaintiff, and paid claims directly to Plaintiff outside of the claim asserted herein without ever contacting, consulting or obtaining any input from Cigna plan members that received services from Plaintiff, and without challenging or objecting to any of the previous Assignments executed by Beneficiaries outside of the claim asserted herein. Based on the continued course of conduct, Plaintiff has relied on its right to assert claims directly with the Defendants and its TPA in continuing to render services (including providing use of a facility) or performing procedures to Patient X. By reason of the foregoing, the Plan is estopped from asserting that claims for reimbursement for medical services or procedures, or any of the other claims asserted herein, are subject to any anti-assignment provision in the Plan.

iii.     At no time during the dealings between Plaintiff and Defendants did Defendants ever state that a specific reason for any adverse benefit determination was an anti-assignment provision, nor did they reference a specific anti-assignment provision in any Plan document.

iv.     By reason of the Plan's continuing course of conduct in not asserting or relying on any anti-assignment provision, the Plan has waived any arguable right to argue, assert or rely upon any anti-assignment provision in the Plan.

62.     As it stands, the Plan purports to provide OON benefits to its Plan Beneficiaries.  The Plan promises its Plan Beneficiaries the freedom to receive and obtain reimbursement for

healthcare services from his or her provider of choice, including services obtained from OON providers. Under the terms of the Plan, the Plan must promptly pay benefits for OON services based upon the usual, customary and reasonable rate ("UCR") for that service in the same geographic area.

### D.     *Defendants' ERISA Violations*

63.     At all relevant times, and with specific respect to Defendants' acts alleged herein, Defendants, as ERISA fiduciaries to the Plan, delegated all claims administration duties to Cigna. In particular, Defendants, as fiduciaries, are not only responsible for interpreting and applying Plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R. §2560.503-1 (ERISA Claims Procedure"), and effectuating benefit payments from Defendants' own assets, but are also responsible for Cigna, the Plan's TPA and co-fiduciary, and its interpretation and application of Plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R. §2560.503-1 (ERISA Claims Procedure"), and effectuating benefit payments from Defendants' assets.

64.     As ERISA fiduciaries, Defendants ***must discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and their beneficiaries."*** 29 U.S.C. §1104(a)(1). This means, *inter alia*, that Defendants must ensure that their Plan is administered and governed "in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with [ERISA]." By allowing Cigna to convert and embezzle Plan Assets to pay its own accounts through a unauthorized Viant discount program  and "Fee-Forgiveness Protocol" scheme, thereby imposing the liability of the unpaid bills on the Plan Beneficiary, Patient X, Defendants have violated their obligations to the Plan and Plan Beneficiary and breached their fiduciary duties.

65.     Defendants knew or should have known that Cigna's "fee-forgiveness protocol" cannot be triggered nor can it ever be applicable in the case where Defendants, through Cigna, unambiguously certify through multiple documents to Patient X and Plaintiff that Patient X's cost-sharing obligation is $0.00; thus, Remark/Denial Code 0322 as the reason for not paying Plaintiff its Entitled Amount is irrelevant.[24]

66.     Defendants knew or should have known that Cigna, the Plan's co-fiduciary, withdrew $14,849.50 from the Plan's Trust Account to "pay" Plaintiff for the services Plaintiff provided to Patient X, issued Check Number "00377676657" to itself while simultaneously issuing the same Check to Plaintiff, cashed the Check for its own account and placed a Stop Payment on the same Check issued to Plaintiff, and deceptively informed Plaintiff that payment was denied because Patient X's cost sharing obligation was not met through its "Fee-Forgiveness Protocol" scheme while simultaneously misrepresenting to Patient X and Plaintiff that Patient X's cost sharing obligation was $0.00. Defendants, with actual knowledge of this activity, intentionally permitted Cigna to employ this fraudulent scheme to ultimately and indefinitely abstract and convert the benefit plan payment/Entitled Amount to Cigna's own use.

67.     Defendants knew or should have known that Cigna engaged in this 'Fee-Forgiveness Protocol" scheme systematically for all Plans that Cigna manages as the TPA, and has done so for an extended period of time, as evidenced by the Fifth Circuit decision in *North Cypress v. Cigna Healthcare*, where the Fifth Circuit determined that there are "strong arguments that Cigna's plan interpretation is not legally correct…" *i.e.*, Cigna's "Fee-Forgiving Protocol" may very well be  considered a violation of ERISA. However, despite actual knowledge of the Fifth Circuit's determination, Defendants intentionally continued to permit Cigna to engage in this type of fraudulent activity while simultaneously ignoring the fact that money had been withdrawn from

---

[24] Remark Code 0322 - CHARGES WHICH YOU ARE NOT OBLIGATED TO PAY OR FOR WHICH YOU ARE NOT BILLED OR FOR WHICH YOU WOULD NOT HAVE BEEN BILLED EXCEPT THAT THEY WERE COVERED UNDER THE PLAN ARE NOT COVERED. CIGNA WILL RECONSIDER THIS CLAIM ONCE WE SEE PROOF OF PAYMENT.

the Plan's Trust Account, and even if Plaintiff is not eligible to receive the benefit payment, Cigna should never be allowed to keep the Plan Assets for itself.

68.      Defendants knew or should have known that the Plan provides that Plan Beneficiaries remain liable for any billed amounts that the Plan, through Cigna, refuses to pay OON providers, such as Plaintiff. Thus, Cigna's misconduct, authorized by Defendants, has also imposed a financial liability on Patient X for treatment that Cigna acknowledged to be a Covered Service.

69.      In addition to Defendants and Cigna violating the terms of the Plan, Defendants and Cigna have also breached its fiduciary duty to comply with the minimum requirements of "full and fair review" of claims under ERISA and the regulations promulgated there under. Cigna's failure to send cashable checks to Plaintiff in the amounts owed under the Cigna Plan governed by ERISA constituted an "adverse benefit determination" under ERISA that obligated Cigna, as the Plan's TPA, to provide Plaintiff with ERISA mandated notice and appeal rights. Cigna ignored this legal requirement.

70.      The definition of "adverse benefit determination" included in the ERISA Claims Procedure includes not only "a denial, reduction, or termination of" benefits, but also a "failure to provide or make payment (in whole or in part) for" a benefit.[25] Cigna's unauthorized Viant reductions and "fee-forgiveness protocol" denials, therefore, constitute adverse benefit determinations. Defendants, through Cigna, *failed to treat its unilateral decision to withhold payment as an adverse benefit determination, and did not provide any of the informational items or appellate procedures mandated by the ERISA Claims Procedure*. For example, on the EOB sent to Plaintiff concerning offset claims, it failed to:

    (i)     set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(i);

    (ii)    identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(ii);

---

[25] 29 C.F.R. § 2560.503-1(m)(4).

(iii)    describe any additional material or information necessary for the Cigna Insured or Plaintiff to receive the benefit, 29 C.F.R § 2560.503 1(g)(1)(iii);

(iv)    describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R § 2560.503-1(g)(1)(iv);

(v)    advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-        1(g)(1)(iv);

(vi)    identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, C.F.R. § 2560.503-1(g)(1)(v)(A); and

(vii)    did not provide *any* appeal rights – much less the type of rights set forth in the ERISA regulations, 29 C.F.R. § 2560.503-1(h).

71.    Because Defendants and Cigna failed to comply with the ERISA Claims Procedure, any administrative remedies are "deemed" exhausted pursuant to 29 C.F.R. § 2560.503-1(l). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants and Cigna do not acknowledge that these denials constitute adverse benefit determinations at all, and thus offer no meaningful administrative process for challenging such offsets.

### E.    *Together with Cigna, Defendants Owe Fiduciary Duties to the Plan Beneficiary, Patient X*

72.    Under ERISA, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details regarding the Plan, such as the terms of eligibility for enrollees, the types of benefits covered, and more. Pursuant to public policy set forth in ERISA, as a self-insured welfare benefit plan, the Plan shall be interpreted and implemented solely in the best interests of the Plan Beneficiaries and in accordance with the Plan Document/Instrument.[26]

### *29 U.S.C. § 1104 – Fiduciary Duties*

*Prudent Man Standard of Care* -A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and: (A) for the exclusive purpose of providing benefits to participants and their beneficiaries…; (D) in accordance with the documents and instruments governing the plan insofar as

---

[26]*See* 29 U.S.C. § 1104(a)(1)(A)

such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

73.     Defendant Macy's Inc. serves as both the Plan Sponsor and Plan Administrator of the Plan. Additionally, Plan Sponsor employs Stephen J. O' Bryan who holds the position of Plan Administrator for the Plan. Through Mr. O' Bryan's position with the Plan, coupled with the Form 5500 portraying Mr. Bryan as the Plan Administrator, Mr. O' Bryan is charged with the responsibilities and duties of the Plan's Plan Administrator. For all intents and purposes and in accordance with ERISA, Defendant Mr. O' Bryan serves as a trustee-like fiduciary of the Plan.

74.     Not only must the Defendants, as plan fiduciaries, act in accordance with the Plan's governing documents and solely in the interests of the Plan Beneficiaries, but Defendants are also statutorily barred from the following:

### 29 U.S.C. § 1106 – Prohibited Transactions

*Transactions between Plan and Party in Interest* – A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

*Transactions between Plan and Fiduciary* – A fiduciary with respect to a plan shall not – (i) deal with the assets of the plan in his own interest or for his own account, (ii) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of in participants or beneficiaries, or (iii) receive and consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

75.     Both Defendants and Cigna, serve as co-fiduciaries to the Plan. Defendants knowingly empowered Cigna with discretionary authority and control over the claims administration of the Plan, which includes, but is not limited to, the adjudication of medical claims (including, but not limited to, full and fair review of appealed claims), determining coverage and reimbursements, and the disposition of Plan Assets. Alarmingly, despite the broad power entrusted to Cigna, Defendants failed in their statutory fiduciary responsibility to oversee, check, and

properly govern Cigna's administration of the Plan in accordance with the Plan Documents and in the best interest of the Plan Beneficiaries.

76.     On March 10, 2015, in North Cypress v. Cigna, 781 F.3d 182 (5th Cir. 2015), a case brought against Cigna for denials of benefits based upon the same exact purported "obligated to pay" plan exclusion used in the fee-forgiveness scam described above, the United States Fifth Circuit of Appeals rendered its opinion directly notifying Cigna that there were "strong arguments" that its interpretation of the clause was not "legally correct." Critically, the Fifth Circuit explained that the "ordinary plan members who read [the exclusion]" would be unlikely to "understand the language to condition coverage on the collection of coinsurance, rather than simply describing the fact that the insurance does not cover all of a patient's costs." Despite alerting the Defendants to this fact, Defendants allowed Cigna to continue to issue its strange stance, and continued to demand proof that providers collected patients' deductibles and coinsurance amounts in full before paying benefits claims submitted by out-of-network providers. Furthermore, This Court, in its interpretation of the Fifth Circuit's opinion stated Cigna's interpretation of the exclusion "charges for which you are not obligated to pay" is "flawed" and "legally incorrect."[27] And most significantly, This Court has definitively stated it "is of the opinion that ERISA does not permit the interpretation embraced by Cigna" and that Cigna's actions, on behalf of Defendants, "was improper and violative of the plans' terms." Since this Court has delivered its opinion, Defendants and their TPA, Cigna, have been made aware of the decision by its publication, have yet to correctly and justly administer the claims at issue.

77.     Defendants not only promised to provide out-of-network benefits to their employees and their dependents, Defendants charged and collected premiums from them. Unfortunately, the out-of-network benefits promised to beneficiaries of the Plan were apparently fictional, as Defendants have paid nothing to the Assignor-Patients' out-of-network provider. Instead of paying the providers who have medically treated their plan beneficiaries, Defendants enable and allow

---

[27] *Connecticut Gen. Life Ins. Co.*, 2016 WL 3077405, at *37.

their agent and co-fiduciary Cigna to unlawfully use the Plan Assets to pay itself grossly excessive and fundamentally unfair amounts. Meanwhile, Defendants seek to unlawfully punish and penalize their plan beneficiaries for electing to use their promised out-of-network benefits by wrongfully refusing to pay for their out-of-network claims.

## COUNTS AGAINST DEFENDANTS

78.     The Plaintiff, as a statutory defined Claimant with valid and unchallenged Assignment, is entitled to ERISA rights "to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review" after Plaintiff has legally and administratively exhausted any and all appeal remedies.[28] Therefore the Plaintiff is entitled to pursue Benefit claims: (i) to recover benefits due for already approved claims but abstracted and converted by the Defendants' co-fiduciary, Cigna; (ii) breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2)  in violation of 18 U.S.C. § 664, 29 U.S.C. §§ 1104, 1105, 1106(b)(1)(d); injunctive relief to enjoin the Defendants from engaging in prohibited transaction 29 U.S.C. § 1132(a)(3); and injunctive relief to permanently remove the Defendant Stephen J. O'Bryan from serving as fiduciary to the Plan permanently under 29 U.S.C. § 1132(a)(3).

### V.  COUNT ONE

### *Claims under ERISA § 502(a)(1)(b )*

79.     Plaintiff incorporates and realleges the allegations set forth above.

80.     Plaintiff is a statutorily defined Claimant with a valid and unchallenged Assignment from Patient X who is a Plan Beneficiary under the Plan. ERISA Claimants are entitled to ERISA rights to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. It is undisputed and unchallenged by Defendants that Plaintiff has exhausted administrative appeal remedies. Additionally, Plaintiff is not disputing the Plan's determination of the Entitled Amount; however Plaintiff has never received the benefits payment

---

[28]45 CFR §147.136 (a) - Internal claims and appeals and external review processes. (iii) Claimant. Claimant means an individual who makes a claim under this section. For purposes of this section, references to claimant include a claimant's authorized representative.

from **Check Number "00377676657"** which was either embezzled or unpaid by Cigna. Plaintiff is seeking a judgment for Plaintiff to receive the benefit it is legally due and entitled to, but was instead converted by Cigna with Defendants actual knowledge. As the Plaintiff-Claimant of Patient X, Plaintiff is harmed or injured in the amount of $18,561.89, which includes the Check Amount of $14,849.50 (Viant Discount Amount) and $3,712.39 (the unauthorized amount that was discounted through Viant) that was embezzled by the Defendants and co-fiduciary, Cigna. Plaintiff is entitled to recover benefits due to it and Patient X under the terms of the Plan and applicable law, including (but not limited to) ERISA §502(a)(1)(B).

## VI. COUNT TWO

### *Breach of Fiduciary Duty and Co-fiduciary Liability under 18 U.S.C. §664 and 29 U.S.C. §§ 1104, 1105, 1106(b)(1)(d)*

81.     Plaintiff incorporates and realleges the allegations set forth above.

82.     Defendants as Plan Fiduciaries owe Plaintiff statutory fiduciary duties under 29 U.S.C. §1104 to discharge its duties in the best interest of the Plan Beneficiary, Patient X, by safeguarding the Plan Assets and responsibly selecting TPAs as a co-fiduciary under 29 U.S.C. §1105;

83.     Defendants knew or should have known ERISA prohibits Plan Asset embezzlement under 18 U.S.C. §664 and self-dealing under 29 U.S.C. §1106, but knowingly failed its statutory duties after having actual knowledge that Cigna has systematically and historically abstracted, converted, and otherwise embezzled the Plan Assets to pay its own account.

84.     Even after Defendants were notified by Plaintiff of evident embezzlement, self-dealing, and conflicts of interest, Defendants knowingly failed to do its due diligence and timely investigate the alleged violations, and instead continued to conspire, authorize, and orchestrate with Cigna, to conceal the alleged embezzlement and self-dealing, and failed to take corrective actions to remedy detected offenses in violation of 18 U.S.C. §664 and 29 U.S.C. §§1104, 1105, 1106(b)(1)(d).

85.     As evidenced above, as a direct result of Defendants' breach of fiduciary duties under the statutes, "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."[29] ALTERNATIVELY, Plaintiff is seeking a surcharge remedy thus to obtain equitable relief for violations of 18 U.S.C.§664 and 29 U.S.C. §§1104, 1105, 1106(b)(1)(d), as evidenced on administrative records has shown that the violation of the fiduciary duty imposed upon that fiduciary and the actual harm was directly and legally caused by the Defendants' violation.

## VII. COUNT THREE

### *Injunctive Relief to Stop Viant/Contractual Obligation Discounts and "Fee-Forgiveness Protocol" Denials*

86.     Plaintiff incorporates and realleges the allegations set forth above.

87.     Defendants, through Cigna, have historically engaged in this systematic Viant/Contractual Obligation Discount scheme by discounts under the following false pretenses that: (i) Plaintiff is an in-network provider (PPO Contract) with Cigna, which allows Cigna to make contractually agreed upon discounts to the Allowed Amount even though Plaintiff is an OON provider; (ii) Plaintiff has a contract or agreement in place with Viant, a third party repricing company that allows Viant to make unilateral discounts on Plaintiff's claims in accordance with the parameters put in place by the contract/agreement; or (iii) Viant and Plaintiff engaged in negotiations over a specific claim that Plaintiff submitted, Plaintiff consented to a discount based upon the negotiation over the specific claim, and Plaintiff is paid based upon the negotiation and consent given. Through these false pretenses and intentional misrepresentations, Defendants harmed every Plan Beneficiary under the Plan. Plaintiff is seeking injunctive relief to enjoin Defendants, through Cigna, from engaging in this illicit activity. This injunctive relief request is made in accordance with 29 U.S.C. § 1132(a)(3).

---

[29]*Cigna v. Amara,* 131 S. Ct. 1866 (2013).

88.     The Defendants have historically engaged in this systematic "fee-forgiveness protocol" scheme  by withdrawing Plan Assets under the pretense that it will pay providers for services provided to Plan Beneficiaries, but then turn around and deny those withdrawn payments under the aforementioned guise, and ultimately pay its own account as evidenced by the claim subject to this action. Defendants' reckless violation of its fiduciary duties and embezzlement of Plan Assets are strictly prohibited under 18 U.S.C. §664 and 29 U.S.C. §§1104, 1105, 1106(b)(1)(d), and through its prohibited actions, Defendants harmed every Plan Beneficiary under the Plan. Plaintiff is seeking injunctive relief to enjoin Defendants from engaging in the same systematic and historical fiduciary breach used to harm the Plan Beneficiary by unlawfully abstracting and converting a Plan Beneficiaries' benefit payments to the use its own account. This injunctive relief is made in accordance with 29 U.S.C. § 1132(a)(3).

## VIII. COUNT FOUR

*Injunctive Relief to Remove Stephen J. O'Bryan as Fiduciary and Plan Administrator to the Plan and Cigna as Co-Fiduciary and TPA to the Plan*

89.     Plaintiff incorporates and realleges the allegations set forth above.

90.     Defendant, Stephen J. O'Bryan, and co-fiduciary Cigna, committed fiduciary breaches with actual knowledge, malice, and intent even after repeated notices and alerts from Plaintiff by recklessly disregarding his fiduciary duties encompassed under federal and statute regulations. Defendant, Stephen J. O'Bryan, and co-fiduciary Cigna are continuously and irrevocably harming and injuring Plan Beneficiaries with no intention to stop. Plaintiff is seeking injunctive relief or a declaratory order to remove Defendant, Stephen J. O'Bryan as a fiduciary and administrator to the Plan permanently, and to prevent Defendant, Stephen J. O'Bryan from ever being a fiduciary and administrator to any ERISA governed plans in the future. Plaintiff is also seeking injunctive relief or a declaratory order to remove Cigna as a co-fiduciary and TPA to the Plan permanently.

## IX. COUNT FIVE

### *Failure to Provide Full and Fair Review*

91.    Plaintiff incorporates and realleges the allegations set forth above.

92.    Although Defendants were obligated to do so, Defendants failed and refused to provide a "full and fair review" to Plaintiff on Patient X's claim, either on their own or by and through their agent and co- fiduciary Cigna, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C.§1133 and the regulations promulgated under ERISA. Plaintiff appealed to Defendants and Cigna on multiple occasions, and as a result exhausted all of its administrative appeal requirements under the Plan and ERISA before bringing this lawsuit.

93.    Defendants' misconduct recited above was the direct and proximate cause of Plaintiff's harm.

## X. COUNT SIX

### *Failure to Provide Requested and Required Documentation*

94.    Plaintiff incorporates and realleges the allegations set forth above.

95.    Defendants have not provided the following requested documents, which ERISA requires Defendants to produce to Plaintiff upon request: a complete and accurate master governing plan document, a complete and accurate summary plan description, the complete administrative claim file, and all documents showing the actual basis for the adverse benefit determination and the methodology used in applying that basis and making that determination.

96.    Defendants' failure to comply with Plaintiff's request for information pursuant to 29 U.S.C. §1132(c)(1)(B) which provides a civil penalty/sanction in the amount of $110.00 per day for such failure or refusal to provide the requested documents and information and Plaintiff is entitled to receive this sanction against Defendants, in addition to an order from this Honorable Court compelling Defendants to produce the requested documents. Plaintiff requests the Court to levy a similar penalty against Defendants as this Court, the Southern District of Texas, levied against Cigna in *Connecticut General Life Insurance Company v. Humble Surgical Hospital,*

LLC.[30] Defendants have received numerous written requests from Plaintiff specifically requesting these documents, but Defendants knowingly and intentionally failed and refused to provide them, in violation of ERISA, causing harm and prejudice to Plaintiff. Defendants' failure to disclose the requested plan documents was intentional, willful, and committed in bad faith, to further deceive Plaintiff with misrepresentations as to benefits covered under the plan.

## XI.COUNT SEVEN

### *Attorney's Fees*

97.     Plaintiff has presented claims to Defendants demanding payment for the value of the services described above. As a result of Defendants' failures to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action. Plaintiff is therefore entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

98.     Plaintiff is also entitled to an award of attorney's fees on its ERISA claims. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party."[31]

99.     Plaintiff demands a jury trial on all issues for which trial by jury is permitted.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court issue judgment against Defendants granting Plaintiff the following relief:

1.     Plaintiff's actual damages;

2.     Statutory penalties and surcharges permitted by law;

3.     Attorney's fees, including attorney's fees in the event of an appeal of this lawsuit;

4.     Prejudgment and post-judgment interest at the highest rates permitted by law;

---

[30] *Connecticut General Life Insurance Company v. Humble Surgical Hospital,* LLC – Civil Action No. 4:13-CV-3291
[31] 29 U.S.C.§1132(g)(1).*See Hardt v .Reliance Std. Life Insurance Co*., 130 S.Ct .2149 ,2152 (2010);*see also Baptist Mem .Hosp. -Desoto, Inc.v .Crain Auto.,Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

5.      An injunction and/or other equitable relief as appropriate to arrest, correct, and prevent acts and omissions by Defendants that violate the Plan and/or ERISA, including, but not limited to, removal of Stephen J. O'Bryan as a plan fiduciary and Cigna as the Plan co-fiduciary;

6.      Plaintiff's costs of court; and

7.      All other relief, legal and equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Ebad Khan*_____
Ebad Khan
State Bar #: 24092625
Federal Bar #: 2810999
Email:  ekhan@trinityhealthcarenetwork.com
17400 Red Oak Drive
Houston, Texas 77090
Telephone: 832.202.6028
Facsimile: 832.446.6961

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
*REDOAK HOSPITAL, LLC*